IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEVEN CLAYTON THOMASON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.  2:20-CV-292-WKW [WO] |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee for Home Equity Mortgage Loan Asset-Backed Trust Series INABS 2006-A, Home Equity Mortgage Loan Asset-Backed Certificates Series INABS 2006-A, | ) ) ) ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is the third lawsuit in eight years that Plaintiff Steven Clayton Thomason

("Thomason") has commenced challenging the initiation of nonjudicial foreclosure

proceedings of his residential home in Montgomery, Alabama.  Before the court is

Defendant Deutsche Bank's motion to dismiss filed pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure (Doc. # 13) and accompanying memorandum of

law (Doc. # 14).[1] Deutsche Bank moves for dismissal on grounds of *res judicata* or,

---

[1] Defendant—Deutsche Bank National Trust Company, As Trustee for Home Equity Mortgage Loan Asset-Backed Trust Series INABS 2006-A, Home Equity Mortgage Loan Asset-Backed Certificates Series INABS 2006-A—is referred to as "Deutsche Bank."

alternatively, on the merits.  Mr. Thomason filed a response in opposition.  (Doc. # 23.)  Because Mr. Thomason's claims are barred by *res judicata* and because they cannot survive Rule 12(b)(6) scrutiny, Deutsche Bank's motion is due to be granted.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).  Deutsche Bank does not contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a claim must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The law "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  The complaint must contain more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'"  *Fin. Sec. Assur., Inc. v.*

*Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 557, 559).

Notably, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013) (citing Fed. R. Civ. P. 10(c)). In addition, the court can consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[T]he defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

## III. BACKGROUND

Many of the events leading up to this action have been examined in two prior lawsuits in this court. *See Thomason v. One West Bank, et al.*, No. 2:12-CV-604-MHT (M.D. Ala. July 11, 2012) (*Thomason I*), and *Thomason v. Ocwen Loan Servicing, LLC, et al.*, 2:19-CV-256-ECM (M.D. Ala. Apr. 8, 2019) (*Thomason II*). For context and because the *res judicata* effect of *Thomason I* and *II* on this lawsuit is at issue, the facts and history are drawn from all three suits.

**A.**     **The Promissory Notes and Mortgages on the Seibles Road Property**

In 2005, Priscilla Thomason obtained a loan in the principal amount of $78,375.00 from Eva Bank to purchase residential property at Seibles Road, Montgomery, Alabama, pursuant to two promissory notes.  She alone executed the promissory notes.  (Doc. # 9, at ¶ 7; Doc. # 14-1 (Promissory Note dated Nov. 28, 2005).)  The Seibles Road residence was to be Priscilla and Mr. Thomason's marital home.  To secure the notes, Priscilla and her husband, Mr. Thomason, mortgaged the home to Mortgage Electronic Registration Systems, Inc., as nominee for Eva Bank, and to its successors and assigns.  (Doc. # 9, at ¶ 9; Doc. # 16-2, at 3.)  Both Mr. and Mrs. Thomason executed two mortgage instruments as "husband and wife as tenants in common."[2]  (Doc. # 14-2, at 2.)  One of the covenants in the mortgage instruments—which will be referred to as the "co-signer's covenant"—provides:

> Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make

---

[2] The litigation history reveals that there was one loan in the principal amount of $78,375, two promissory notes on the loan (one for $66,000 and one for $12,375), and two mortgages on the Seibles Road home securing the notes.  The two promissory notes and the two mortgages are dated November 28, 2005.  *See, e.g.*, *Thomason I*, Doc. # 93, Exs. A, B, & C.  In this lawsuit, Deutsche Bank has attached to its memorandum of law in support of its motion to dismiss only the first promissory note and first mortgage in the amount of $66,000, and the authenticity of these documents has not been challenged.  (*See* Docs. # 14-1, 14-2.)  To the extent necessary, the court takes judicial notice of the second promissory note and second mortgage.  *See Tellabs, Inc.*, 551 U.S. at 322; *see Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892 (11th Cir. 2013).

any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

(Doc. # 14-2, at 10.)  The mortgages were recorded in the Office of the Judge of Probate of Montgomery County, Alabama.  (*See, e.g.*, Doc. # 1-1, at 49.)

In October 2009, Priscilla succumbed to breast cancer.  "No probate estate was created for" Priscilla, and the Seibles Road property "passed directly from Priscilla" to Mr. Thomason, "as the joint owner with right of survivorship," pursuant to Alabama Code § 35-4-7.  (Doc. # 9, at 3–4.)  Prior to Priscilla's death, the notes and mortgages were in default.  *Thomason II*, Doc. # 1-1, at 4 (¶¶ 20–26).

On February 2, 2011, Mortgage Electronic Registration Systems, Inc., sold and assigned the first mortgage to Deutsche Bank, as trustee.[3]  (Doc. # 14-3 (Assignment).)

## B.   The History of Deutsche Bank's Foreclosure Proceedings Against the Seibles Road Property

For the better part of a decade, the promissory notes—executed by Priscilla Thomason—and the mortgages on the Seibles Road property securing the notes—executed by both Mr. and Mrs. Thomason—have been in default, and the Seibles Road property has been in a perpetual state of imminent foreclosure.  Between

---

[3] A copy of the assignment of mortgage, as recorded, is attached as Exhibit 3 to Deutsche Bank's memorandum of law in support of its motion to dismiss.  (Doc. # 14-3.)  The assignment is for the Thomasons' mortgage that was recorded November 28, 2005, in Book 03232, Page 0807, in the Office of the Judge of Probate of Montgomery County, Alabama.  (Doc. # 14-3.)  Page 0807 is page one of the first mortgage.

March 2011 and March 2020, Deutsche Bank has initiated, postponed, and rescheduled nonjudicial foreclosure proceedings against the Seibles Road property numerous times. The court has endeavored to piece together the timing and reasons for the myriad rescheduling and postponements; however, a precise reconstruction has proved difficult.

In March 2011, Deutsche Bank notified Mr. Thomason that "it had accelerated the unpaid balance of the debt owed by Priscilla L. Thomason, deceased, and was seeking a nonjudicial foreclosure pursuant [to] the mortgage." (Doc. # 9, ¶ 12.) Mr. Thomason sought bankruptcy protection to avoid foreclosure, but that case suffered dismissal in late 2011. *See In re Thomason*, No. 11-30520-DHW (M.D. Ala. Bankr. Mar. 1, 2011), ECF No. 74.

Thereafter, in a letter dated February 21, 2012, Deutsche Bank again informed Mr. Thomason that the note and mortgage were in default and that it was accelerating the unpaid balance of the debt. The letter notified Mr. Thomason that the foreclosure sale was scheduled on March 27, 2012.[4] (Doc. # 9-1 (Ex. 1).) On March 26, 2012,

---

[4] The February 21, 2012 letter was signed by an attorney at the law firm of Sirote & Permutt, P.C., on behalf of Deutsche Bank, and was addressed to Mr. Thomason on Seibles Road. The letter noted that the "Promissory Note and Mortgage dated the 28th day of November, 2005," were in default and that the "mortgage loan" had been "sold to Deutsche Bank." It provided that, "[b]y virtue of default in the terms of said Note and Mortgage," Deutsche Bank "accelerates to maturity the entire remaining unpaid balance of the debt . . . ." The letter also included a payoff amount of $80,749.99 and that Deutsche Bank was commencing "foreclosure under the terms of the Mortgage." (Doc. # 9-1 (Ex. 1).) The letter provides that "a copy of the foreclosure notice to be published in the Montgomery Independent" is enclosed, but the enclosure is not included as part of Exhibit 1. Subsequent letters bear a similar format.

Mr. Thomason filed another bankruptcy petition; however, it was dismissed the following month.  *See In re Thomason*, No. 12-30717-DHW (M.D. Ala. Bankr. Mar. 26, 2012), ECF No. 17; *see also Thomason II*, Doc. # 1-1, at 7.  The foreclosure was scheduled again for July 12, 2012, and then was postponed to August 16, 2012.  (Doc. # 1-2, at 45 (Letter from Sirote & Permutt, PC, notifying Mr. Thomason that Deutsche Bank had postponed the foreclosure sale to Aug. 16, 2012).)   The foreclosure did not take place on August 16, 2012.  The parties do not indicate why; however, it likely was because Mr. Thomason commenced *Thomason I* on July 11, 2012.  *See Thomason I*, Doc. # 1 (Compl.).

A year later, in a letter dated August 8, 2013, Deutsche Bank again notified Mr. Thomason of the default and that the foreclosure sale was scheduled for September 10, 2013.  (Doc. # 1-1, at 41.)  This letter is dated after the entry of the first final judgment in *Thomason I*.  *See Thomason I*, Doc. # 31 (Mar. 28, 2013 Judgment).

Five years later, Mr. Thomason received a similar letter dated June 28, 2018, from Deutsche Bank that the note and mortgage were in default, that Deutsche Bank was accelerating the unpaid balance of the debt, and that a foreclosure sale was

---

The parties' briefing is ambiguous as to whether Deutsche Bank is foreclosing under the terms of the first or second mortgage or both.  It appears, and will be presumed (based on the payoff amount in the above letter and the assignment of mortgage (Doc. # 14-3)), that the February 21, 2012 letter and all subsequent letters notifying Mr. Thomason of a foreclosure sale refer to the first promissory note and first mortgage, and not the second promissory note and second mortgage.

scheduled for July 31, 2018.  (Doc. # 9-2 (Ex. 2).)  The timing of this letter coincides with the second final judgment in *Thomason I*, which was entered on March 26, 2018, after remand from the Eleventh Circuit.  For reasons not articulated in the record, the foreclosure was postponed to November 20, 2018 (Doc. # 1-2, at 63), and then to January 8, 2019 (Doc. # 9, at ¶ 14), but the foreclosure did not take place on January 8, 2019.[5]

More than sixteen months later, in a letter dated March 18, 2020, Deutsche Bank notified Mr. Thomason that a foreclosure sale was scheduled for April 21, 2020, in accordance with the "enclosed publication notice."  (Doc # 9-3 (Ex. 3).)[6] That sale later was postponed to June 2, 2020.  (Doc. # 9, at 5.)

## C.   This Lawsuit

On April 14, 2020, Mr. Thomason filed this action in the Circuit Court of Montgomery County, Alabama, which Deutsche Bank timely removed to this court. The governing amended complaint, filed on May 18, 2020, contains three counts, labeled as follows:  "Request for preliminary injunction to prevent Deutsch[e] Bank's unlawful foreclosure due to statute of limitations" (Count 1); "Request for permanent injunction to prevent Deutsch[e] Bank's unlawful foreclosure" (Count 2); and "State law claim–wantonness" (Count 3).  Count 1 sought to preliminarily enjoin

---

[5] The postponements occurred during the pendency of *Thomason II*, which commenced on July 31, 2018, and concluded on August 21, 2019, with the entry of final judgment.

[6] Exhibit 3 does not include the publication notice.

the June 2, 2020 foreclosure.  (Doc. # 9, at 8.)  Count 2 requests a permanent injunction preventing Deutsche Bank, or its assignee, "from unlawfully foreclosing on his home" and a declaration that the property is "free and clear" of any encumbrances.  (Doc. # 9, at 9–10.)  Count 3 seeks damages.  (Doc. # 9, at 11.)

The claims in the amended complaint rest on two principal legal theories. Concerning the first, each count shares a common allegation, namely, that Deutsche Bank violated Alabama law when it attempted to foreclose more than six years after its initial acceleration of the debt on the defaulted note and mortgage.  Hence, Mr. Thomason contends that the singular, essential facet of the long-drawn-out starts and stops to foreclosure is that the most recent foreclosure is foreclosed by a purported six-year statute of limitations.  (*See* Doc. # 9 ("Now, over eight (8) years later, . . . Deutsche Bank has once again allegedly asserted its election to 'accelerate' the unpaid balance of the debt" and "is seeking to foreclose" (Count 1, ¶ 21); "[t]he undisputed facts in this case clearly demonstrate the Defendant Deutsch[e] Bank elected to accelerate the debt . . . eight years ago" (Count 2, ¶ 30); and "beyond the applicable six-year statute of limitations established by Alabama law, Defendant Deutsche Bank is wantonly attempting to foreclose" (Count 3, ¶ 45).  The amended complaint alleges that Alabama law does not permit a "mortgagee, such as Deutsche Bank, to claim a renewed six-year period of limitations [on] every occasion it asserts

acceleration on the debt, and threaten[s] foreclosure."  (Doc. # 9, ¶ 27.)  This challenge will be referred to as the "statute-of-limitations" theory.

As to the second theory challenging the lawfulness of Deutsche Bank's most recent attempted foreclosure, Mr. Thomason alleges that the residence on Seibles Road "passed directly" to him "as joint owner with right of survivorship, free from any lien," including any mortgage, when Priscilla Thomason died in 2009.  (Doc. # 9, at ¶¶ 32–36, 40–45; Doc. # 23, at 4, 5.)  According to Mr. Thomason, Priscilla Thomason's "loan(s), and any party's 'right to any monies owed,' were extinguished at the time of her death in 2009."  (Doc. # 23, at 5.)  This challenge will be referred to as the "interference-with-property-rights" theory.[7]

The amended complaint's allegations and legal theories were insufficient to sustain Mr. Thomason's motion for a preliminary injunction.  The Order denying preliminary injunctive relief to Mr. Thomason reasoned that he could not establish a substantial likelihood of success on the merits and that additional delays in the foreclosure sale would not serve the public interest.  (Doc. # 21, at 2–8.)  Notwithstanding the previously scheduled foreclosure sale on June 2, 2020, and the

---

[7] The new document (a quitclaim deed dated December 7, 2018) and theories that surface for the first time in Mr. Thomason's opposition brief are procedurally improper and have not been considered. *See Wilchombe v. TeeVee Toons. Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (holding that the district court properly refused to entertain contracts attached to the plaintiff's brief filed in opposition to a motion to dismiss because "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims"); *see also Jallali v. Nova Se. Univ., Inc.*, 486 F. App'x 765, 767 (11th Cir. 2012) ("[A] party cannot amend a complaint by attaching documents to a response to a motion to dismiss." (citing *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007)).

denial of Mr. Thomason's motion for a preliminary injunction, Deutsche Bank represents that it has not yet foreclosed.  (Doc. # 14, at 17 n.8.)

## D.    The *Thomason I* and *II* Lawsuits

As stated, this is Mr. Thomason's third suit in this court to stop what Mr. Thomason contends would amount to an illegal foreclosure of his home.   In *Thomason I*, filed in this court on July 11, 2012, Mr. Thomason sought money damages and added Deutsche Bank, among other Defendants, in his amended complaint.  Mr. Thomason alleged numerous violations of federal statutes and state law stemming from Deutsche Bank's initiation of foreclosure proceedings in 2013 (and earlier) and from its alleged failure to provide a loan modification.[8]  This action "has 243 docket entries, was dismissed, went to the Eleventh Circuit on appeal, was remanded back to this district, and dismissed again."  (Doc. # 21, at 7 (discussing *Thomason I*).)  The final dismissal occurred on March 26, 2018, in favor of Deutsche Bank on summary judgment.  *Thomason I*, Docs. # 205, 214.  Thereafter, the district court denied Mr. Thomason's multiple post-judgment motions, *id.* at Docs. # 217, 219, 227, 236, 243, and in-between those filings, the Eleventh Circuit dismissed Mr. Thomason's appeal for failure to pay the filing and docketing fees, *id.* at Doc. # 234.

---

[8] Mr. Thomason brought multiple claims under the U.S. Constitution, as well as claims under the Fair Housing Act of 1968, the Fair Debt Collection Practices Act, the Real Estate Settlement Procedures Act, the Racketeer Influenced and Corrupt Organizations Act, the Equal Credit Opportunity Act, and the Alabama Deceptive Trade Practices Act.

Mr. Thomason commenced *Thomason II* in the Circuit Court of Montgomery County, Alabama, on July 31, 2018, naming Deutsche Bank, among other entities. He sought to enjoin the foreclosure of his Seibles Road home under state law, contending that, for Deutsche Bank's part, it "pursued illegal foreclosure" in 2012 and 2013, "refuse[d] to approve or deny Plaintiff a loan modification," and "lack[ed] standing" to foreclose "as merely the assignee of the mortgage." *Thomason II*, Doc. # 1-1, at 15, 20.  The action was removed to this court.[9]  The *Thomason II* court dismissed the lawsuit with prejudice on grounds of *res judicata*, explaining that the actions in *Thomason I* and *II*

> arise out of the same nucleus of operative fact; namely, the circumstances surrounding Plaintiff's acquisition of two mortgages though EvaBank and Plaintiff's subsequent default on those mortgages. In both cases, Plaintiff's claims arise from the same alleged misconduct of Defendants—i.e. the "mishandling" of his loan modification application.  *See Thomason I*, (Doc. 1); *Thomason II*, (Doc. 1-1).

*Thomason II*, Doc. # 14, at 7 (Recommendation of the Magistrate Judge); *see id.* at Doc. # 20 (Order adopting Recommendation).

The Order adopting the Magistrate Judge's Recommendation also addressed Mr. Thomason's motion to amend the complaint, which he filed in lieu of objections. The proposed amended complaint included a challenge to the "2018 Foreclosure

---

[9] Federal-question jurisdiction authorized the removal by the Federal Deposit Insurance Corporation ("FDIC"), who was a named defendant.  *See* 12 U.S.C. § 1819(b)(2)(A) (providing that any civil suit in which the FDIC, in any capacity, is a party is "deemed to arise under the laws of the United States").

Attempt." *Thomason II*, Doc. # 15, at 2.  Raising a statute-of-limitations bar to the commencement of the 2018 foreclosure proceedings, Mr. Thomason alleged that, in violation of "Alabama Foreclosure Laws," the defendants failed to foreclose on the Seibles Road property within six years.  *Thomason II*, Doc. # 15-1, at 2.  That proposed claim is substantively identical to the claim in the present suit.

The *Thomason II* court denied Mr. Thomason's motion to amend on grounds of futility, holding that "Plaintiff's proposed amended complaint cannot defeat the *res judicata* bar that prohibits continued litigation of his claims."  *Thomason II*, Doc. # 20, at 2.  Final judgment was entered on August 21, 2019.  *Id.* at Doc. # 21.  In the Eleventh Circuit, Mr. Thomason "failed to show a non-frivolous issue on appeal" precluding him from appealing *in forma pauperis*, Doc. # 26, and thereafter, the Eleventh Circuit dismissed the *Thomason II* appeal for "want of prosecution" based on his failure to pay the filing and docketing fees.  *Thomason II*, Doc. # 28, at 2.  Back in the district court, the *Thomason II* court denied his post-judgment motions. *Thomason II*, Docs. # 30, 32.

## IV.  DISCUSSION

Deutsche Bank moves to dismiss the claims in the amended complaint as barred by *res judicata* or, alternatively, on the merits.  These grounds have merit and are addressed in turn.

## A.    *Res Judicata*

"The doctrine of *res judicata*, or claim preclusion, bars the parties to an action from litigating claims that were or could have been litigated in a prior action between the same parties." *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 892 (11th Cir. 2013) (citation omitted).  The principle underlying *res judicata* is that a "full and fair opportunity to litigate protects a party's adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (citation, internal quotation marks, and alteration omitted). To successfully invoke *res judicata*'s bar, the movant must satisfy these prerequisites:  "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action."[10]  *Id.*

---

[10] Because the judgments in *Thomason I* and *II* were entered by federal courts exercising federal question jurisdiction, the court applies federal preclusion principles.  *See generally Sellers v. Nationwide Mut. Fire Ins. Co.*, 968 F.3d 1267, 1272–73 (11th Cir. 2020) (leaving intact prior precedent that applied federal preclusion principles where the prior judgment at issue was entered by a federal court exercising federal-question jurisdiction) (citing *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1316 (11th Cir. 2003)).  In any event, Mr. Thomason has not demonstrated that the outcome would be different if Alabama's rules governing *res judicata* (upon which he relies) were applied.

Mr. Thomason does not contest Deutsche Bank's demonstration of the first three elements, and the bank's arguments are sound and supported by controlling authority. (*See* Doc. # 14, at 10–11.)  Only the fourth element is at issue.

Under the fourth element, "[a] cause of action is the same for *res judicata* purposes if it 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" *Lobo*, 704 F.3d at 893 (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1297 (11th Cir. 2001)).  "It is well settled that *res judicata* turns primarily on the commonality of the facts of the prior and subsequent actions, not on the nature of the remedies sought." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1295 (11th Cir. 2001).  *Res judicata*, thus, "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.'" *Olmstead v. Amoco Oil Co.*, 725 F.2d 627, 632 (11th Cir. 1984).

*Res judicata* does not require a plaintiff to file a supplemental pleading in order to add claims that "arise after the original pleading is filed in the earlier litigation." *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992).  For purposes of *res judicata*, "claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action." *Id.* (internal footnote omitted).

As discussed below, the doctrine of *res judicata* bars Mr. Thomason's claims predicated on his interference-with-property-rights theory and statute-of-limitations theory.

### 1.   *Interference-with-Property-Rights Theory*

The amended complaint challenges Deutsche Bank's authority *ab initio* to initiate foreclosure proceedings on the premise that, upon Priscilla Thomason's death in October 2009, the residence on Seibles Road "passed directly" to Mr. Thomason "as joint owner with right of survivorship, free from any lien" or mortgage, depriving Deutsche Bank of any legal right or standing to foreclose on the property.  (Doc. # 9, at ¶ 40.)

*Res judicata* presents a clear bar to this legal theory.  The focus of Mr. Thomason's tripartite actions—*Thomason I*, *Thomason II*, and this action—is on preventing the foreclosure sale of the Seibles Road property, and each suit incorporates legal challenges to Deutsche Bank's authority to foreclose under the terms of the mortgage instruments.  In *Thomason I* and *II*, the facts focused largely on the defendants' alleged refusal to grant Mr. Thomason a loan modification. However, a strong factual undercurrent in these two lawsuits was that the foreclosure proceedings were illegal because they interfered with Mr. Thomason's property rights in the Seibles Road residence that he inherited upon the death of his spouse in 2009.  *See, e.g.*, *Thomason II*, Doc. # 1-1, at 12–13; *Thomason I*, Doc. # 89, at 13,

15, 19, 31–32.  To illustrate, the filings in *Thomason I* reflect Mr. Thomason's complaints about the allegedly unlawful infringement on his "community property right of survivorship," *Thomason I*, Doc. # 1, at 11, and the defendants' refusal "to respect Alabama State law of Married in Common and deed with the Plaintiff's name on it," *id.* at Doc. # 89, at 15.  Relatedly, in all three suits, Mr. Thomason has complained every which way for his preferred outcome for relief arising from the fact that he is a signatory only on the mortgages, and not on his deceased wife's promissory notes.  *See, e.g., Thomason I*, Doc. # 89, at 31 ("Defendants all engaged in a Deceptive Fraudulent Scheme to deny ownership claiming Plaintiff didn't sign the note while knowing full well that Plaintiff's name was on the deed and the mortgage and that he is the surviving Spouse wherein the house goes to the survivor."); *Thomason II*, Doc. # 1-1, at 11 ("Defendants have engaged in Deceptive Business Practices, in the foreclosure proceedings to reclaim the belongings by casting forth falsehood that Plaintiff had no right to his own loan after his married wife died . . . ."), *id.* at Doc. # 1-1, at 12–13 ("Plaintiff was lead [sic] to believe that he and his wife had jointly purchased the home[;] it wasn't until the death of wife and illegal foreclosure proceedings were started before Plaintiff was aware that he was not a signer on the note and this Fraud.").

While the legal theories have evolved, little by way of the facts has changed during the years of litigation.  The legal theories in *Thomason I*, *Thomason II*, and

this action arise out of the same "operative nucleus of fact." *Olmstead*, 725 F.2d at 632; *see also Reynolds v. JPMorgan Chase Bank, N.A.*, No. 5:13-CV-440 (MTT), 2014 WL 132248, at *4 (M.D. Ga. Jan. 14, 2014) (finding that the plaintiffs' foreclosure-related claims were barred by *res judicata* where the plaintiffs sought "relief that, for all intents and purposes, [was] the same as what they previously sought—recognition of their rights to the property") (citing *Jaffree v. Wallace*, 837 F.2d 1461, 1469 (11th Cir. 2001)).   Accordingly,   *Thomason I* and *II* erect a *res judicata* bar to the claims in this lawsuit premised on Deutsche Bank's allegedly wrongful interference with Mr. Thomason's property rights.

## 2. *Statute-of-Limitations Theory*

The amended complaint also asserts that Deutsche Bank's June 28, 2018 notice to Mr. Thomason of the scheduled foreclosure sale on July 31, 2018, violated a purported six-year statute of limitations under Alabama law for the commencement of a foreclosure proceeding.  Under this theory, the limitations period commenced when Deutsche Bank initially accelerated the loan and initiated a foreclosure action, which undisputedly occurred more than six years prior to the 2018 foreclosure notice.[11]  (*See, e.g.*, Doc. # 9, ¶¶ 37, 45.)  *Res judicata* also bars the claims arising under this theory.

---

[11] Mr. Thomason is referring to the letter, dated June 28, 2018, from an attorney with the law firm of Sirote & Permutt, P.C., on behalf of Deutsche Bank, notifying Mr. Thomason of the acceleration of the debt on the defaulted note and mortgage.  That letter informed Mr. Thomason that the foreclosure sale was scheduled for July 31, 2018.  (Doc. # 9-2 (Ex. 2).)

Mr. Thomason's arguments against preclusion focus on *Thomason I*. Mr. Thomason argues that, because Deutsche Bank initiated its "present attempt to wrongfully foreclose on Plaintiff's property" three months after the *Thomason I* court entered summary judgment against him, his claims in this suit "address[] separate and distinct operative facts" that are not precluded by *res judicata*. (Doc. # 23, at 3.) Mr. Thomason is correct that he could not have included a challenge to the 2018 foreclosure notice in *Thomason I* because *Thomason I* had concluded by that time. *See Manning*, 953 F.2d at 1360; *see also Woodfork v. MidFirst Bank*, No. 117CV00485LMMCMS, 2017 WL 8218967, at *7 (N.D. Ga. Apr. 11, 2017) (finding that the plaintiff's lawsuit alleging a wrongful foreclosure was not barred by the plaintiff's earlier lawsuit because the present "wrongful foreclosure claim . . . concern[ed] a scheduled foreclosure sale date occurring months after her previous lawsuit was dismissed, and thus could not have been raised in the prior action"), *report and recommendation adopted*, No. 1:17-CV-485-LMM-CMS, 2017 WL 8218960 (N.D. Ga. May 2, 2017). Significantly, Mr. Thomason's argument fails to address the *res judicata* effect of *Thomason II* on his current claims arising from his statute-of-limitations theory.

Mr. Thomason commenced *Thomason II* on July 31, 2018, which was *after* Deutsche Bank's June 28, 2018 letter notifying him of the scheduled foreclosure sale in July 2018. (Doc. # 9-2 (Ex. 2).) Yet, in his complaint in *Thomason II*, Mr.

Thomason did not challenge Deutsche Bank's initiation of the July 31, 2018 foreclosure proceedings.  He challenged only the attempted foreclosure of his home based on allegedly wrongful acts occurring between 2011 and early 2015.   In *Thomason II*, it was not until after Mr. Thomason was confronted with the Magistrate Judge's Recommendation, dated July 8, 2019—recommending dismissal on grounds that *Thomason I* presented a *res judicata* bar to his claims in *Thomason II*—that Mr. Thomason moved to amend his complaint to add claims challenging the defendants' "2018 Foreclosure Attempt."  *See Thomason II*, Doc. # 15, at 2.  The *Thomason II* court denied that motion on grounds of futility.  *Thomason II*, Doc. # 20.

In the present litigation, Mr. Thomason challenges the correctness of the Order in *Thomason II* denying his motion to amend the complaint.  However, this new lawsuit is not the proper forum to contest the Order in *Thomason II* denying his motion to amend the complaint.  The proper forum would have been in an appeal of the Order to the United States Court of Appeals for the Eleventh Circuit; however, in *Thomason II*, Mr. Thomason failed to perfect an appeal.  *Thomason II*, Docs. # 26, 28.

"Where a plaintiff's motion to amend its complaint in the first action is denied, and plaintiff fails to appeal the denial, *res judicata* applies to the claims sought to be added in the proposed amended complaint."  *EFCO Corp. v. U.W. Marx, Inc.*, 124

F.3d 394, 399–400 (2d Cir. 1997) (collecting authorities).  The Eleventh Circuit has echoed this principle in applying *res judicata*.  *See Shannon v. Nat'l R.R. Passenger Corp.*, 780 F. App'x 777, 779 (11th Cir. 2019) ("[T]he district court's denial of [the plaintiff's] motion to amend [the complaint] in *Shannon I* and her failure to challenge that denial in her *Shannon I* appeal means that the claims she brought in *Shannon II* are barred . . . by res judicata.").  Here, also, "regardless of [*Thomason II*'s] reasons for denying leave to amend, it may fairly be said that [P]laintiff has failed to avail himself of an opportunity to pursue a remedy in the [*Thomason II*] action, and thus application of res judicata is warranted." *EFCO Corp.*, 124 F.3d at 400 (alterations added).   Mr. Thomason's current claims challenging Deutsche Bank's commencement of foreclosure proceedings in 2018 as occurring outside a six-year statute of limitations are barred by *res judicata*.

## B.   Dismissal Under Rule 12(b)(6) for Failure to State a Claim

To the extent that the *res judicata* bar seems harsh, the court's finding need not rest solely on *res judicata*.  The claims also fail scrutiny under Rule 12(b)(6).

### 1.   *Interference-with-Property-Rights Theory*

Mr. Thomason's claim that he inherited the property on Seibles Road, "free from any lien," including any mortgage, when his wife passed away reflects a misunderstanding of Alabama property law.  (Doc. # 9, at ¶¶ 32–36, 40–45; Doc.

# 23, at 4, 5.)  Mr. Thomason conflates Alabama's property laws that apply to liens and mortgages.

Alabama follows the title theory.  *See Bailey Mortg. Co. v. Gobble-Fite Lumber*, 565 So. 2d 138, 143 (Ala. 1990) ("Alabama is a title theory state . . . . [A] mortgage passes legal title to the mortgagee, and the mortgagor is left with the equity of redemption." (internal quotation marks omitted)).  In jurisdictions such as Alabama, where the mortgage transfers legal title from the mortgagor to the mortgagee, a unilateral mortgage by a joint tenant will "cause a severance of the joint tenancy."  *Stewart v. AmSouth Mortg. Co.*, 679 So. 2d 247, 249 (Ala. Civ. App. 1995), *rev'd on other grounds sub nom. Ex parte AmSouth Mortg. Co.*, 679 So. 2d 251 (Ala. 1996).  The *Stewart* court explained that "[t]he rule that a mortgage by one joint tenant operates to destroy the joint tenancy in a 'title' state is so well accepted that . . . [i]t is a rare (or negligent) commercial lender who would accept a mortgage from a joint tenant without first seeing that the joint tenancy was severed or that all the joint tenants signed."  *Id.* (citation and internal quotation marks omitted).

Here, as is the responsible practice in Alabama, Mr. Thomason, alongside his wife, was required to sign the mortgages.  Under the co-signor's provision of the mortgages, Mr. Thomason was not personally liable for repayment of the notes (*see, e.g.*, Doc. # 14-2, at 10); however, by signing the mortgages, he agreed to allow the lender or its assignee to foreclose on the Seibles Road home if Ms. Thomason did

not pay the notes in accordance with their terms.  In other words, he was jointly and severally liable on the mortgages, which survived Ms. Thomason's death.

This case is distinguishable from *Ex parte Arvest Bank*, 219 So. 3d 620 (Ala. 2016), the case upon which Mr. Thomason relies.  In *Ex parte Arvest Bank*, a creditor obtained a judgment against the husband and secured a judgment *lien* against property owned by the husband and his wife as joint tenants with right of survivorship.  *See id.* at 621–22.  The Supreme Court of Alabama held that the lien was extinguished when the husband died.  *See id.* at 628–29.  The court was careful to point out, though, that "a mortgage . . . is different than a judgment lien." *Id.* at 627 n.6.  "Unlike a mortgage, a lien does not transfer ownership of property; it simply gives the judgment creditor a claim against any property owned by the judgment debtor.  Hence a lien by itself does not interfere with the unities of a joint tenancy or cause a severance thereof." *Id.* (internal citation omitted).   Mr. Thomason's reliance on *Ex parte Arvest Bank* is baseless.

Mr. Thomason's claim based on the theory that his wife's death extinguished the mortgages on their home, which they owned in joint tenancy with right of survivorship, thereby preventing Deutsche Bank from foreclosing on the Seibles Road property, wholly lacks merit.

2.    *Statute-of-Limitations Theory*

As to Mr. Thomason's claim invoking a purported six-year statute of limitations for foreclosures under Alabama law, Judge Brasher, who previously presided over this action, succinctly explained why this claim fails:

> A more fundamental problem with Plaintiff's claim is that the Alabama Supreme Court has held explicitly that "there is no statute of limitation on the foreclosure of a mortgage." *Byrd v. Se. Enterprises, Inc.*, 812 So. 2d 266, 272 (Ala. 2001). Yet, Plaintiff claims that Alabama UCC Articles 3 and 9, Ala. Code (1975) § 7-3-118(a) and (g)), and Ala. Code (1975) § 6-2-34, all specifically prohibit Defendant's attempt at foreclosure. Defendant responds that Plaintiff "conflates a statute of limitations applicable to recovery on a promissory note with the statute of limitations applicable to a foreclosure." *See* Doc. 16 at 28. The Court agrees with Defendant.
>
> Section 3-118(a) of the Uniform Commercial Code provides that "the obligation of a party to pay a note . . . at a definite time must be commenced within six years" after the accelerated due date. Section 7-3-118(a) of the Alabama Code is identical. Subsection (g) of the relevant Alabama Code Section provides a three-year limitation for the enforcement of duties or rights "arising under this article and not governed by this section." However, Title 7 of the Alabama Code mentions foreclosure as neither duty nor right. Mentions of mortgages in Section 9 of the UCC seem limited to defining what one is and how one is to be filed.
>
> Foreclosure is nowhere to be found in any of the code sections cited by Plaintiff. Ala. Code (1975) § 6-2-34 is a catchall provision that establishes a six-year statute of limitations for a laundry list of actions. The closest it comes to referencing mortgages or foreclosure is a reference to "actions founded on promises in writing not under seal" and "actions for the recovery of money upon a loan." *See* Ala. Code (1975) § 6-2-34(4) and (5). In certain contexts, courts in Alabama have found these subsections relevant to mortgages. *See e.g. Branch Banking & Tr. Co. v. McDonald*, 2013 WL 5719084, at *6 (N.D. Ala. Oct. 18, 2013) (holding that "[b]ecause actions for declaratory

judgment and for reformation and reinstatement of a mortgage touch on contract, the court looks to the statutes of limitation that apply to "a normal contractual arrangement" i.e. § 6-2-34(4) and (5)); *Lamar v. Lamar*, 470 So. 2d 1242, 1245 (Ala. Civ. App. 1985) (holding that § 6-2-34(5) is inapplicable where there is no evidence that a payment of a mortgage balance is considered to be "a loan to the estate.")  Even where courts mention this statute in connection with mortgages however, there is no accompanying mention of foreclosure.

The only case Plaintiff adduces to support his claim about the statute of limitations on mortgage foreclosures is *Evans v. Kilgore*, 246 Ala. 647, 649, 21 So. 2d 842, 843 (1945).  However, *Evans* was an action to recover an amount due on a promissory note, not a foreclosure. As neither the statutes nor the caselaw adduced by Plaintiff support the existence of his claim, it is unlikely any of his counts will move forward. The Court is bound to apply Alabama law as pronounced by the Alabama Supreme Court to the merits of Plaintiff's claim, and that law does not favor him.

(Doc. # 21, at 5–7.)

Mr. Thomason raises the same arguments in opposition to the motion to dismiss that he raised in advocating for a preliminary injunction.  (*See* Doc. # 23, at 5–7.)  The arguments lacked merit then, and they lack merit now.  Under controlling Alabama law, "there is no statute of limitation on the foreclosure of a mortgage." *Byrd v. Se. Enters., Inc.*, 812 So. 2d 266, 272 (Ala. 2001).  The result is the same under Rule 12(b)(6), as it was under Rule 65 of the Federal Rules of Civil Procedure:  Mr. Thomason cannot prevail.

## V.  CONCLUSION

Mr. Thomason cannot avoid the preclusive effect of the prior judgments in *Thomason I* and *II*, and his claims in this case seeking to avert the foreclosure sale

of the Seibles Road property are barred by *res judicata*.  Additionally, the claims in Mr. Thomason's amended complaint fail to state a claim upon which relief can be granted and, thus, alternatively, are subject to dismissal under Rule 12(b)(6). Accordingly, it is ORDERED that Deutsche Bank's motion to dismiss (Doc. # 13) is GRANTED and that this action is DISMISSED with prejudice.

Final judgment will be entered separately.

DONE this 12th day of April, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE